Mr. Herman for the amicus curiae, Mr. Humber for the appellate. Good morning. May it please the court, my name is Andrew Herman. I'm appearing as court-appointed amicus on behalf of Mr. Brown. I'm mindful of the court's order relating to application for the amicus curiae. Mr. Brown is an African-American who has a medically diagnosed cognitive disability. He receives assistance from the District of Columbia Department of Disability Services. His complaint describes him as quirky and idiosyncratic. He has established an ADA claim in the series of filings that he made with the district court. He alleges a series of incidents that occurred at the Foggy Bottom Whole Foods involving harassment and other inappropriate treatment by Whole Foods employees, and that this was based on his race and his disability. In two meetings with a manager at Whole Foods, he requested two specific accommodations from the grocery store. The first was that the Whole Foods employees be trained not to harass him, not to target him for his normal behavior. And second, to the extent that that could not occur perfectly, that he have recourse to meaningful help from a Whole Foods manager. And certainly this is a reasonable request for accommodation from Whole Foods, that the managers be trained to recognize Mr. Brown and understand his disability and allow him to shop without harassment. Is the request that employees stop profiling and targeting him a request for an accommodation or just a request to stop discriminating? Well, certainly it's a request to stop discriminating. I believe the specific modification would be that should that disability continue, that he would have recourse to meet with someone who was aware of his situation. Access to a manager accommodation, I understand that. But the other accommodation claim is murkier. Well, Your Honor, the ADA speaks about not being treated differently as a result of your disability. We're talking about the last sentence on page 35 of the appendix? Yes, Your Honor. So how is it you reframe that as an accommodation, a request for accommodation? The very last sentence of the page. That's what you're relying on, aren't you? Yes, Your Honor. Well, to the extent that he's unable to go shopping there without being followed, without having people take pictures of him, when he requests a sample that they refuse to give it to him, when he tries to pay, they ask him why he's not. Yeah, yeah, yeah. So to these... But the accommodation is, what, stop violating the ADA? Well, the accommodation is that when Whole Foods has a meeting with their staff, they say to the staff, Mr. Brown is a frequent shopper here. He's met with Ashley. He's described why he acts in a way which may seem odd to you or threatening. Please know that this is his normal behavior. The record doesn't have any... I mean, this is on a motion to dismiss. There's no allegation that he's done anything wrong here. And let him shop, let him complete his business, and let him treat him like any other customer. Let me ask you about the language of the ADA, the specific language. It takes such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals  Now, you must be talking about auxiliary services rather than aids, because this language, the other cases that I've found anyway, deal with a service dog, with someone who is hard of hearing, that type of thing. So you can think about auxiliary aids in that sense. But what would be an auxiliary service that you're talking about, other than what I think was Ms. Ashley said, when you come in, yes, if you request a manager, a manager will come. Go ahead. Yes, Your Honor. I appreciate your reference to the service dog. In the Stan versus Walmart case, which addresses that, the concern there was that she was being harassed by the Walmart employees who weren't trained properly to recognize that this was a service dog that she needed. The request in that case wasn't that she be permitted to bring the service dog in. That was already acknowledged by Walmart for obvious reasons that that was compelled. The question in the Stan case was whether she had an ADA claim because the Walmart employees were not properly trained, were not equipped to deal with the fact that she was coming in with the service dog and were giving her a hard time upon her entrance or when she was in the store and what she wanted, and what the court said in that case was a viable ADA claim, was that Walmart reach out to its employees and train them on how to deal with someone with a service dog. Now, in your case, and I go back to the language, because of the absence of auxiliary aids and services, what is the auxiliary aid or service specifically that he requested, first of all? The auxiliary service would be the education of the Whole Foods employees to recognize that someone like him with a cognitive disability was still able to shop in Whole Foods in an appropriate manner. It's a training of the staff. It's the policy at Whole Foods that would welcome and accommodate people like Mr. Brown in the store without the types of incidents that he experienced culminating in his arrest. And how do you know they didn't do that after Ms. Ashley said, I'm taking notes, I'm going to talk to the management and... Well, I do not know if they haven't done it. Obviously, this is a preliminary stage of the case. Certainly, we know that they didn't do a particularly effective job of it because within two weeks of his meeting, he had his encounter with Mr. Cleal, which culminated in him being arrested and removed from the store. Because I'm a little confused as to why we would have to characterize that aspect of the case as an accommodation claim or why we would have to care about the auxiliary aid or services provision. Why isn't it just flat-out 12182A, denial of equal access to the goods, services, and this facility? It's just plain-out discrimination. I'm curious as to why there seems to be a need to shoehorn it into an accommodation claim as opposed to a straight-up discrimination claim. He alleges that. There's certainly one way of reading it. Maybe there's three things going on. There's train your employees, get me a supervisor, and just stop discriminating. Yes, Your Honor. So we don't even need to worry about whether there is an auxiliary service that they needed because with respect to that claim, it could be just straight-up discrimination. Now that you know and understand my disability, stop doing it. Certainly, Your Honor. Would the Court like to turn to the question of the civil rights act claim? All right. So we very much appreciate the Court's... I'm sorry. I apologize. No, no. Can I just back up quickly? Of course. Why isn't what Whole Foods did enough? I mean, they did remove a cashier and make that person go work somewhere else. Why wasn't that enough? Well, the ADA speaks about taking all necessary steps. And I think the fact that Mr. Brown experienced harassment repeatedly, it wasn't one single individual, it was numerous individuals. Mr. Brown's complaint also makes reference to the fact that he observed employees who would encounter him and then they would go back and sort of talk amongst themselves about him and then come back out. And I think the implication and the way that Mr. Brown perceives it is that the employees at the store recognized him and that there was a concerted effort by a group of employees to discourage him from shopping there and ultimately ensure that he did not come back. I do have another question, and that is one prompted by Judge Millett. You only alleged a failure to accommodate, which the district judge construed as being 12-182-B2-A2. That is the thing I just talked about. And you haven't objected to that characterization of your claim. I mean, we're not in the several theories of discrimination. You have limited yours, or he limited yours, to the auxiliary aids and services, and you haven't objected to that. Is that correct? That's correct. Do you want to talk about your... Well, just in the limited time that I have left... Well, go ahead. We believe that Oscar Myers v. Evans is very closely analogous to the notice provision and the disposition of this matter. In that case, in the ADA context, I see my time has expired. Go ahead. Thank you. In the ADA context, Oscar Myers permitted essentially post-filing notification by a plaintiff without looking at what the statute was for filing that state notification. They were willing to accept the post-filing notification  We believe that that is very closely analogous to what occurred here and that the court would be well-suited to apply the same type of analysis to this matter. Thank you. Thank you, Your Honor. Thank you. We'll give you some time to reply. Mr. Humber. Good morning. May it please the Court, I'm Chris Humber on behalf of Whole Foods. I would like to begin by addressing the Oscar Myers decision in light of the Court's order. I think the ADEA, which was at issue there in Oscar Myers, is significantly different from Title II in one very important respect in this case. And that is that the ADEA has its own statute of limitations. Title II does not. And as a result, the Oscar Myers Court had no occasion to consider the borrowing rule that courts have relied on for decades in the context of Title II cases. In this context, the courts look to the most analogous state statute of limitations and borrow that subject to its tolling provisions, the tolling provisions of state law. And they do so unless the state limitations period is somehow fundamentally not subject to that statute. I'm sorry, is this a jurisdictional argument or a statute of limitations argument you're making? I'm sorry, I don't understand. Jurisdictional arguments are different than statute of limitations unless you prove that the statute of limitations is jurisdictional. It's unclear as to what you're arguing with your tolling and timing periods and that kind of stuff. Okay, so what I'm arguing is that the reason that the Oscar Myers decision, Justice Brennan's decision and the Oscar Myers decision, does not require the district court in this case to remand or to dismiss the complaint for the purpose of allowing Mr. Brown to go to a state agency and file a time-barred complaint and then come back to court. The reason that we don't do that here is because the ADAEA has its own statute of limitations. And as a consequence, when the court is applying Title II, it has to borrow the state statute of limitations, which is why it matters in this context. Does Title VII have its own statute of limitations? Yes. And Title II does not. And that's why Zipes is not analogous here. Zipes is ADAEA. The important relevance of Oscar Myers is in relation to a failure to invoke the state agency, a failure which went right through, I guess, the period of the Supreme Court, and which here has gone through, unless we regard an email as satisfactory. So the Oscar Myers solution is hold the case in surveillance, goes to the state agency, the plaintiff is invited to go to the state agency. If the state agency chooses to apply its limitations period, then the view of Oscar Myers is satisfactory compliance with the requirement of going to the state agency. So that's the point for which it seems to me it's relevant here, and I don't understand what you've said to make it irrelevant. Sure. So in Oscar Myers, the court can allow the complainant to go back to the state and go through the process of filing a time-barred claim because under the ADEA, defendants are inherently protected by the statute of limitations within that statute, within the federal statute. In Title II, by contrast, there is no federal statute of limitations. So in Title II cases, courts are required to rely on the state statute of limitations, which is why what the court did in Oscar Myers would not be appropriate here. Because if the court did... The challenge in Oscar Myers was relating the duty to go to the state agency to the plaintiffs bringing his claim in federal court. The solution there essentially removed the problem of failure to do it in advance and failure to do it in a timely way, right? I don't understand why the same problem is presented here and therefore the same solution equally applicable. I'll briefly try to explain it this way. If the court did here what the court did in Oscar Myers, the court does here what the court did in Oscar Myers, there would be no limitations period whatsoever for Title II claims. Why is that? Because it would allow complainants to bypass the only potential source of a limitations period. I think you're talking about two different things. There's a limitation period in terms of getting to the state agency, and I think your characterization is correct as to that. I don't see what that has to do with the limitations period as to getting to the federal agency or court. Well, because if the federal courts do not borrow from the state statute of limitations, as courts have been doing for 50 years, Oscar Myers doesn't say don't borrow. Right. The issue didn't even come up in Oscar Myers because Justice Brennan was explicit about the fact that the ADEA has its own limitations period. I don't want to belabor the point. Explain it to me later. To clear up one thing, have we held that the state statute of limitations governs Title II actions? This court has not. Has the Supreme Court? No. Okay. I would, however, let me clarify, Judge, the extent to which I'm making the jurisdictional argument. We certainly have made that argument. I would also suggest that that is not dispositive here because of the Supreme Court's decision in Hallstrom makes very clear that the court need not reach jurisdictional questions in order to determine that statutory language is mandatory and not subject to waiver. And even if- Well, Hallstrom specifically distinguished civil rights statutes, so I don't see how that can- And we've got Oscar Myers, which is a civil rights statute, so that's between the two, I think. It specifically distinguishes Title VII, which under Zipes, it's very clear that is a quintessential claim processing rule. As this court recognized in- Well, it's Title VII and Title II of the same statute. Wouldn't it be a little odd? And let me explain the difference. The material difference between the rule that was issued in Zipes and the rule that's issued here is that, and perhaps it will do me well to belabor a little bit, go into a little bit more depth about the legislative history of the statute. The provision here was intended to confer primary and exclusive jurisdiction in state agencies. That was not the case in Zipes. That's not the case with Title VII. And amicus has suggested that there's no language- of civil rights laws to state agencies for race discrimination. And I will quote from two sections of the congressional record. 110 Congressional Record 13087 is Senator Dirksen, who was instrumental in the Dirksen-Mansfield compromise that actually resulted in passage of the Civil Rights Bill. This was important stuff. He says, At 110 Congressional Record 11936, Senator Dirksen says, I have said over and over again that the primary and the exclusive jurisdiction where those verities were involved should begin at the state level. And it has been wholly our purpose to make this measure a fair and workable one. I'm sorry. Why is the Oscar Mayer solution consistent with that? Subject to the Court's obvious decision in Oscar Mayer, the state agency could not both enforce its time limit, at least in a case where its time limit was violated, it couldn't both enforce its time limit and process the matter. It has to choose. Well, the Court took note in Oscar Mayer that the ADEA creates concurrent jurisdiction. And I think it was even Justice Blackmun in his concurring decision says, we recognize that under the ADEA, claimants have the right to choose whether to go to the federal agency or the state agency. That's not the case in Title II. Title II, the big compromise in Title II, is that states get first exclusive and primary bite at the apple. And I think that's an important distinction that separates Title II out from the entire line of cases that amicus has brought before the Court. But there's a whole other line of cases that more recently has been very clear about what it takes for something to be jurisdictional. And whatever your statutory construction arguments, that doesn't meet the indicia that the Supreme Court has laid down since Arbaugh moving forward for something to be jurisdictional. Well, I would draw the Court's attention to Judge Henderson's decision in Oakley in 2013, where it was this Court considered Arbaugh and concluded that it's proper to examine the text, the context, and the relevant historical treatment of the statute, and that the selection of a proper statutory forum is not a claims processing rule. And for the reasons outlined in our papers, I believe the text, the context, and the relevant historical treatment of Title II all suggest that it should be construed as jurisdictional. But once again, even if it's not. Well, but, I mean, the statute's pretty clear that the exclusive being Title II is its own. District courts, federal courts have jurisdiction, and the exclusive means of enforcing the rights under this chapter are the Title II procedures. So I don't think this is a question about which forum. There's no question that you bring this in this forum. It's only a requirement of notice. It doesn't actually require that you prosecute a claim in the State at all. 2000A6A, which is the jurisdictional provision of Title II, makes express reference to the pursuit of administrative reverence. And it incorporates the concept in A3C. You get to go forward regardless of whether you've exhausted any administrative or other remedies that may be provided by law. But not with respect to whether you have exercised those rights. But it's just notice. Again, you're talking about a forum for litigation, and that's not the same thing as providing notice. There was no notice. There may be a factual dispute about whether there was notice or not. It's unclear. There's no evidence in the record whatsoever that Mr. Amicus concedes that there was no notice prior to filing the complaint. Right. And if we accept that, just as in Oscar Meyer, that doesn't answer whether it's jurisdictional. Can I just ask you, there's no dispute that he was a repeat customer? Correct. For Whole Foods at all. Okay. And there's no dispute that what he requested of Ms. Ashley was unreasonable or the type of thing that would fundamentally alter the services you provide. I know we're at a very early stage. All this stuff can be disputed later. But as of right now, that's not your basis for arguments. It was on the disabilities act. Let me clarify. As of 2012, he was a repeat customer. Mr. Brown could walk into the store tomorrow, and it bears notice that this is a claim for injunctive relief. I mean, he has to show that there's some imminent harm. And he could walk into the store tomorrow. If he experiences discrimination, he can come back to court. We haven't seen him. I'm sorry. Was that in your brief, or did you put that in the record anywhere, or are you just telling us now from the podium that you haven't seen him? What I'm saying is there are no allegations before the court that Mr. Brown has experienced any discrimination of any kind, alleged discrimination, since the beginning of 2012. Has he said he's been in the store? I'm sorry? Has he said that he's been in the store? I can tell you the record is silent on that. We have no idea whether he's been in or not. What's the date of the complaint? He filed the complaint in February of 2013 based on events that occurred in January and February of 2012 and is seeking injunctive relief on that basis. In the event that the court determines that he has adequately pled an ADA Title III claim, I mean, I think that it's going to raise the question of whether the court is still in a position to grant any equitable relief. Well, that's something that's going to need factual development below, right? We don't have anything now on that. We have him asking for future help from Ms. Ashley. We have your concession from your client that he was a repeat customer. As Ashley said, he was a loyal repeat customer. She recognized him, right? That's what we have as of this point. And I'll address your other question, which is, I think, was it a reasonable request that he was making? At this point, again, I don't want to bind you going forward on what you would do, but that's not where the fight's been joined. I think, you know, our position is it's impossible to determine whether it was reasonable or not what he was requesting because it's really not clear what he was requesting. So at this point, you're not disputing that it would be reasonable for someone to say stop profiling, stop targeting? If the request is comply with your obligations under the federal law, then yes, that's obviously a reasonable request. If he's asking for managers to receive a specific kind of training, it's unclear what he's asking. So you just don't know at this point? It's not clear from the complaint at all. But you haven't said that would be an undue burden either, have you? To the extent that you addressed the training request? At this point, because there is no specific request on the table, it's impossible to – I think any answer to that question would be speculative. I mean, it's not clear how any training would have changed the fact of his arrest. He alleges that the police were called because he was accused of stealing food. How – I mean, I don't think he's asking for permission to steal food, and it's unclear how any sort of training would have changed that outcome. So at this point, it's conjectural as to what he's asking for and whether it would be reasonable. All right, thank you. Are there any further questions? Thank you. Does Mr. Herman have – why don't you take two minutes? Thank you very much, Your Honor. Two very brief points. First of all, on the issue of Mr. Brown's returning to the store, the Court's well aware that the last time Mr. Brown was at Whole Foods he was arrested and hauled away. So regardless of whether he would like to return, I think the safe course for him is to – I'm sorry. I don't know how to turn this off. It'll do it one more time and then it will stop. On the issue of the question of statute of limitations, I think that that is largely a red herring. I don't think there's any question that under Title II of the Civil Rights Act, the shortest amount of time that Mr. Brown would have to file a federal claim would be three years, and that would be applying the analysis of the Kearney v. American University case, which is 151F3-1090, which is a D.C. Circuit case, which uses the applicable state tort personal injury statute. I think there's also an argument to be made, and it has been made by a number of district courts, that the statute of limitations for Title II is actually nonexistent. That's put forth in the Mussington case, which is 824F-427 in Note 3, and that case essentially says because only injunctive relief is available for a Title II claim, there's no statute of limitations. There may be application of the doctrine of latches, but – Do you have any – I know you're just damning his information on Mr. Brown's desire to continue shopping at Whole Foods if they were to make the changes that he thought should be made? I suspect that Mr. Brown would be very interested in returning to Whole Foods if he could be assured that he would be able to shop without additional harassment. And cases have held that sufficient for standing in this context, correct? Yes, Your Honor. Can I ask you, do you have the district court order with you in this case? The actual order? Yeah. Yes, Your Honor. Okay. It's in the appendix. All right. Can you turn to page 139? I have it in the appendix, Your Honor. Okay. Well, it's Head Note 8. Okay. Head Note 8, Head Note 9. And I just want to get your interpretation of what was held, particularly when the judge said complaints must be filed within one year. That is not the notice that must be given. Yes. It seems to me what he's done is combined the one-year statute of limitations for actually bringing a complaint in the local court with the notice that is required by a federal statute and said, again, after Head Note 9, because it is no longer possible for Brown to comply with Title II's notice requirement, which is not limited to one year. It's the claim that can be brought in D.C. that's limited to one year. But you can do the notice. That's at least where Oscar Mayer to me comes in. You can do the notice two years later, and D.C. can say, you know what, you're too late for us to do anything. And it seems to me that Oscar Mayer has said, you don't have to be successful. You just have to have that opportunity available to you. And in this case, Bozberg dismissed without prejudice, what is your position on giving notice to D.C. now and a new complaint, waiting 30 days for a new complaint? That's correct, Your Honor. As Justice Brennan said in Oscar Mayer, the question of jurisdiction for state purposes is irrelevant because the notice requirement doesn't require that you file a valid complaint. It just requires that you file notice. And, in fact, I think there's a footnote in Oscar Mayer that basically says, if Iowa wants to waive its statute and accept this complaint, then Iowa can do that. That's not our problem. The only thing the plaintiff has to do is let the state know that he or she is moving forward. So how does that affect the jurisdictional issue? If all your client has to do is file a notice, wait 30 days, and file a complaint in federal court, and the one-year statute of limitations for the local claim is irrelevant, how does that affect your position on jurisdiction, the notice being jurisdictional? It would indicate this is absolutely not jurisdictional, and that's consistent with both the Arbo line and the much more compact analysis in Oscar Mayer. You are appointed by the court. Mr. Herman, we want to thank you for your very able assistance. Thank you. Thank you for the opportunity.
judges: Henderson, Millett, Williams